**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**
**NEW ORLEANS DIVISION**

| | |
|---|---|
| **CASTELLANO-CONTRERAS, et al.,** ) | |
| **on behalf of themselves and all others** ) | |
| **similarly situated,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **CASE NO. 2:06-CV-04340-EEF-SS.** |
| ) | |
| **DECATUR HOTELS, LLC., et al.,** ) | |
| ) | |
| **Defendants.** ) | |

**BRIEF OF AMICUS CURIAE OF EXPRESS FORESTRY, INC., ELLER AND SONS TREES, INC. AND SUPERIOR FORESTRY SERVICE, INC.**

Plaintiffs in this and similar actions[1] allege that their employers violated the Fair Labor Standards Act (FLSA), 29 U.S.C. §201 *et seq.*, by failing to reimburse them in their first week's pay for transportation, visa processing and recruitment costs they incurred in order to accept jobs as legal, foreign guest workers in the United States.  Plaintiffs claim these costs were incurred primarily for the benefit of the employer; thus making them unlawful *de facto* withholdings and deductions from Plaintiffs' wages.

Amici deny that these expenses primarily benefit the employer.  Rather,  the FLSA has consistently held that, with few exceptions, transportation, like meals and other facilities, primarily benefits the employee and falls within the definition of "wages" in the FLSA.  This Court therefore

---

[1] Three other pending cases in which Plaintiffs have made this claim are <u>Recinos-Recinos et al. v. Express Forestry, Inc. et al.</u>, No. 05-1355 (E.D. La., New Orleans division); <u>Leon-Granados v. Eller and Sons Trees, Inc. et al.</u>, No. 1:05-CV-1473 (N.D. Ga., Atlanta Division); and <u>Rosiles-Perez et al. V. Superior Forestry et al.</u>, NO. 1:06-CV-00006 (M.D. Tenn., Columbia division). Plaintiffs in all of these cases, including the instant case, are represented by the Southern Poverty Law Center, along with assorted local counsel.

should reject and dismiss Plaintiffs' claim for reimbursement of such expenses, which is based on Arriaga v. Pacific Farms LLC, 305 F.3d 1228 (11th Cir. 2002).

## SUMMARY OF ARGUMENT

The FLSA has never been applied to require an employer in the U.S. to pay or reimburse an employee for the cost of getting to work. There is no reason for this rule to be any different when the employee accepting a job comes from outside the U.S. Indeed, regulations adopted by the Department of Labor require an employer to pay or reimburse an employee for transportation costs only when the transportation is required of and incidental to the job, as in the example of railroad maintenance-of-way workers. Inbound transportation to accept a new job does not fall within this narrow exception. Regulations requiring reimbursement of inbound transportation costs to workers hired pursuant to the H-2A visa program are unique to the H-2A visa: neither the H-2B or H-1B visa programs impose such an obligation. In fact, the Department of Labor for years has approved H-2B and H-1B visa applications from employers that explicitly state that transportation costs are the responsibility of the employee. This Court should deny the Plaintiffs' claim that they are due to be reimbursed for their transportation, recruitment, and visa processing expenses.

## ARGUMENT AND AUTHORITY

A.    Nothing In The FLSA Requires An Employer To Pay Or Reimburse An Employee For Expenses Incurred In Getting To Work.

The FLSA defines "wages" to "include[] the reasonable cost, as determined by the Administrator, to the employer of furnishing such employee with **board, lodging, or other facilities**, if such board, lodging, or other facilities are customarily furnished by such employer to his employees." 29 U.S.C. §203(m) (emphasis added). "Facilities," in turn, are defined by the

2

regulations as follows:

> (a) "Other facilities," as used in this section, must be something like board or lodging. The following items have been deemed to be within the meaning of the term: ...**transportation furnished employees between their homes and work where the travel time does not constitute hours worked compensable under the Act and the transportation is not an incident of and necessary to the employment**.

> ( c) It should also be noted that under § 531.3(d)(1), the cost of furnishing "facilities" which are primarily for the benefit or convenience of the employer will not be recognized as reasonable and may not therefore be included in computing wages. Items in addition to those set forth in § 531.3 which have been held to be primarily for the benefit or convenience of the employer and are not therefore to be considered "facilities" within the meaning of <u>section 3(m)</u> include:
>> ...**transportation charges where such transportation is an incident of and necessary to the employment (as in the case of maintenance-of-way employees of a railroad)**;

29 C.F.R. §531.32 (emphasis added).  These sections make it plain that the FLSA requires an employer to compensate an employee for transportation expenses <u>only</u> when such expenses are "an incident of and necessary to the employment," as in the example of the maintenance-of-way railroad employee who must travel to the point on the rails where maintenance must be performed.  The cost of commuting, or of transportation required to get the employee to the job for his or her first day of work, is considered to be "primarily for the benefit of the employee."  Indeed, whether the employee is traveling from California, or Iowa, or Honduras to take up a job makes no difference at all under the FLSA.  The expenses the employee incurs in getting to the first day of work are not the employer's responsibility, and nothing in the FLSA requires the employer to reimburse its employees for those expenses.

The Fifth Circuit Court of Appeals considered this question in the case of <u>Vega v. Gasper</u>, 36 F.3d 417 (5th Cir.1994). Gasper was a farm labor contractor who hired seasonal workers for the chili pepper harvest. *Id.* at 423. Workers who sought employment with Gasper would travel from

their homes in Mexico and assemble in El Paso, Texas, from where they were bussed daily to the fields. *Id.* The trip took two-and-a-half-hours, and Gasper considered the workers hired once they boarded the bus. *Id.* The workers filed suit under the FLSA, asserting, among other things, that the defendant's failure to compensate them for their time traveling to and from work constituted a violation of the FLSA. The Court rejected that argument, finding that the travel time was not "hours worked," and the employees had no right to be compensated for that time. The Court noted that the travel time was excluded from hours worked under the Portal to Portal Act, 29 U.S.C. §254, and that the employees did no work before climbing onto the employer's busses to be taken to the fields. 36 F.3d at 424. The fact that the travel took a long time – up to four hours a day – did not make it compensable; it was simple to-work and from-work travel, and noncompensable because it was not preceded by any work done for the employer. *Id.* at 425.

Vega makes it plain that time spent traveling to the employer's worksite to start work is not compensable time. The critical issue is whether the transportation is <u>an incident of and necessary to the employment</u>, which is the defining characteristic of transportation time that *is* compensable. On this point, the Eleventh Circuit in <u>Arriaga</u> resorted to the dictionary instead of looking to the Department of Labor's regulations to determine the true meaning of the phrase. By referring in the regulations above to the case of maintenance-of-way employees of a railroad, <u>Morgan v. Atlantic Coast Line R. Co.</u>, 32 F. Supp. 617, 618 (D.C. Ga. 1940), the Department of Labor was adopting the reasoning of the Court in that case as their regulatory posture, which, according to <u>Chevron</u>, means that the Eleventh Circuit erred by looking instead in the dictionary. In <u>Morgan</u> the Court held:

> Plaintiff was transported from the place where he reported for work and back on a motor furnished by defendant, on which car the laborers and tools used for work were carried. The car was necessary to carry the tools, and the maintenance-of-way

agreement provides that work time begins when leaving and ends when returning to headquarters or camp cars.

Morgan, 32 F. Supp. at 618.

Thus, the term "an incident of and necessary to the employment" means transportation that is required to perform the necessary work of the employment and not the transportation costs incurred in simply getting to the first place where the work is to be performed.  The plaintiffs seek reimbursement for travel that occurred before their work ever started.  Because this travel time does not meet the FLSA's definition of 'hours worked," the FLSA does not require the employer to compensate the employees for this time and the Plaintiffs' claim for reimbursement for inbound travel expenses must be denied.

B.     Regulations Applicable To H-2B Workers Contain No Transportation Reimbursement
        Requirement.

In contrast to the H-2A workers in Arriaga, the Plaintiffs in the instant case were employed pursuant to the H-2B visa program, which does not contain any provision analogous to the H2-A's requirement for reimbursement of inbound travel expenses.  *See* 20 C.F.R. §655.1 (regulations governing "employment of nonimmigrant aliens in the United States in occupations **other than** agriculture, logging, or registered nursing," further identified at 20 C.F.R. §655.2 as "**H-2B workers**") (emphasis added).  In stark contrast to the H-2A visa requirements for agricultural workers, which are set forth in 20 C.F.R. §655 subpart B, the regulations governing other workers are silent as to any transportation reimbursement requirement.  The regulations governing H-2B workers set forth only the requirements for applications for visas and determinations, with a third section making special provision for employment in the territory of Guam.

5

The H-2B regulations in subpart A simply do not enter into the level of detail about the requirements of the contents of job offers and the duty of employers to provide transportation, housing, and subsistence like the regulations that apply to the H-2A agricultural workers.  The amici filing their H-2B applications explicitly state that they will not pay for transportation costs and the U.S. Department of Labor have routinely approved the H-2B applications. Plaintiffs have argued that there is no basis for not extending the rules governing H-2A workers to H-2B workers, but that argument is contrary to the regulations which the U.S. Department of Labor has adopted for these programs.  Visas are anything but fungible, and the requirements for one visa cannot be imported to another. There simply is no basis whatsoever in the regulations for reimbursement of transportation for H-2B employees.

Further, there can be no doubt that the Department of Labor, whose Employment and Training Administration (ETA) authored the visa regulations with the express concurrence of the Wage & Hour Division,  was well aware of the requirements of 29 CFR Part 531, having specifically referenced those regulations. *See* 20 CFR 655.102(b)(13).   Plaintiffs urge this Court to rule that the FLSA requires prompt reimbursement of transportation expenses on the theory that they primarily benefit the employer, as the Eleventh Circuit held in Arriaga.  However, in that case the Eleventh Circuit committed a number of significant errors.  First, it improperly disregarded pertinent U.S. Department of Labor regulations.  Second, it made policy choices that, in addition to being an improper arrogation of the legislative function, were plainly inconsistent with the policy choices reflected in the laws governing the employment of nonimmigrant foreign workers.  Third, it erroneously concluded that transportation costs were incurred "primarily for the benefit of the employer."

1.      The Court Should Defer to the Department of Labor Regulations.

Courts must apply principles of deference when confronted with questions about " 'an agency's construction of the statute which it administers." Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843 (1984)). Chevron deference is warranted when, as here, "it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority." United States v. Mead Corp., 533 U.S. 218, 226-227, 121 S. Ct. 2164 (2001). The Court should defer to the Department of Labor's unambiguous regulations concerning reimbursement of transportation expenses.

2.      Further Provisions in 20 C.F.R. Part 655 Demonstrate That Transportation Costs From And To the Home Country Are Primarily for the Benefit of the Employee.

In regulations adopted to implement the H-1B visa program, which were adopted with the explicit concurrence of the Wage & Hour Division, *see* 65 Fed. Reg. at 80110, the Department of Labor explicitly rejected the idea that an employer should be responsible for transportation costs incurred prior to the commencement of employment.  This goes to the very heart of Plaintiffs' argument, based on Arriaga, that the FLSA requires reimbursement because such costs are 'primarily for the benefit of the employer.'  To the contrary, the H-1B regulations contained in 20 C.F.R. Part 655 make it plain that the Department of Labor does <u>not</u> consider such costs to primarily benefit the employer, but rather to be the responsibility of the employees who incur them in order to accept employment in the U.S.  The portion of the H-1B regulations detailing items that may be considered business expenses thus explicitly state that "initial transportation from, and end-of-employment

7

travel, to the worker's home country shall **not** be considered a business expense,"  65 Fed. Reg. at 80219 (emphasis added).  The explanation continues:

> The Department agrees that liquidated damages may encompass other costs the employer has borne **on behalf of the employee**, **such as transportation and visa processing assistance**. Employers should be aware that liquidated damages may be withheld from the required wage only if permitted under the criteria for allowable deductions at 20 CFR 655.731(c)(7).

65 Fed. Reg. At 80174-75 (emphasis added).   Thus, by purposefully including costs for "transportation and visa processing assistance" borne by the employer on behalf of the employee in liquidated damages, and excluding "initial transportation from . . . the worker's home country" from the definition of expenses which the employer is allowed to count as a business expense, the Department of Labor was stating as a matter of policy that the costs of initial transportation and visa processing are not something that the employer is required or expected to provide, and therefore not an expense for which the employer is expected to reimburse the employee.  These provisions make it clear that when the Department of Labor was considering whether to require the payment of transportation costs such as the H-2A program or not require such payments such as in the H-2B and H-1B program, it was deciding whether such costs primarily benefitted the employee or the employer.  Accordingly, this Court pursuant to <u>Chevron</u> should defer to the Department of Labor's decision.

3.   <u>The Court Decision Should Be Consistent With The Department of Labor's Regulations Requiring That Nonimmigrant Foreign Workers Not Be Given Preferential Treatment</u>.

The policy behind the enactment of both the H-2A and H-2B visa programs is to allow employers to hire foreign workers when workers only when suitable workers are not available in the

U.S. labor market.  This principle is implicit in the regulatory requirements that require employers to advertise for labor locally and to certify to the Department that no local workers are available as a precondition to approval of the visas, and in the rules requiring that wages paid foreign workers not have an "adverse impact" (i.e., undercut) local wages.  It is explicit in the language of the regulations themselves.  20 C.F.R. 655.102(a), which applies to H-2A agricultural employment, provides as follows:

> (a) *Preferential treatment of aliens prohibited*. The employer's job offer to U.S. workers shall offer the U.S. workers no less than the same benefits, wages, and working conditions which the employer is offering, intends to offer, or will provide to H-2A workers. Conversely, no job offer may impose on U.S. workers any restrictions or obligations which will not be imposed on the employer's H-2A workers. This does not relieve the employer from providing to H-2A workers at least the same level of minimum benefits, wages, and working conditions which must be offered to U.S. workers consistent with this section.

Indeed, the Department made a policy decision that employers of H-2A workers were not required to advance transportation costs unless it was the prevailing practice to pay American workers their transportation costs.  20 C.F.R. 655.102(b)(5)(I) states:

> The employer shall advance transportation and subsistence costs (or otherwise provide them) to workers **when it is the prevailing practice of non-H-2A agricultural employers in the occupation in the area to do so,** or when such benefits are extended to H-2A workers.

(Emphasis added).  The policy of neutral, non-preferential treatment could not be more clear, but the effect of Arriaga is directly contrary to that policy because it mandates that nonimmigrant foreign workers receive an extra benefit – transportation costs – which is not available to U.S. workers. Moreover, these employer-advanced transportation costs are not mandatory under H-2A regulations, but rather are only required when it is the prevailing practice to make such advances to U.S. workers.

9

The Eleventh Circuit completely disregarded these regulations in its <u>Arriaga</u> decision, which was contrary to the Supreme Court's direction in <u>Chevron</u> that Courts should defer to the regulations propounded by the various agencies in applying the law.  The Eleventh Circuit's language notwithstanding, it is plain that in <u>Arriaga</u> that Court not only made policy choices of its own, but also failed to follow the policy choices explicitly made by the Department of Labor in adopting regulations pursuant to these visa programs.  Indeed, the 11th Circuit disregarded this explicit requirement in the regulation that there must be a prevailing practice of paying U.S. workers advance travel costs  for the foreign workers to be entitled to the same, and the regulations also made it clear that transportation costs are not required to be paid for U.S. workers.  These are serious errors that a Court sitting in the Fifth Circuit has no reason to perpetuate and expand.

C.    <u>Transportation To Take Up New Employment Does Not Primarily Benefit The Employer</u>.

In determining whether an expense is primarily for the benefit of the employee or employer, Wage and Hour and the Courts must weigh a number of factors.  Where the regulations declare that such costs need not be paid, the Courts must defer to the regulations even if the Court comes to a different conclusion. "[P]articularly in view of the labyrinthine nature of the congressional and regulatory schemes for the administration of wage and hour legislation, 'an agency's construction of its own regulation is entitled to substantial deference.' . . . Even if a court concludes that its alternative construction of the agency's regulation is 'more equitable' or 'more reasonable,' the agency's interpretation of its regulation is not thereby rendered invalid." <u>Soler v. G&U Inc.</u>, 833 F.2d 1104, 1108 (2d Cir. 1987), *citing*   <u>Lyng v. Payne</u>, 476 U.S. 926, 106 S. Ct. 2333, 2341-42  (1986) *and*   <u>Knebel v. Hein</u>, 429 U.S. 288, 294, 97 S. Ct. 549, 553 (1977).

A well-reasoned analysis concluding that travel costs do not primarily benefit the employer, and observing that the benefit is at least mutual to both employer and employee, appears in <u>Alvarado v. R& W Farms</u>, 2001 WL 34103833 (M.D. Fla. 2001) (copy attached), *overruled by* <u>Arriaga</u>, *supra*.

The plaintiffs in <u>Alvarado</u> asserted that the defendant's failure to reimburse them for the costs of the work visa, border crossing, transportation, and job referral fees during the first week of Plaintiff's employment resulted in a constructive underpayment to the Plaintiffs, in violation of the FLSA. The District Court began its analysis by examining whether the transportation costs incurred by the workers were properly classified as "facilities" which are primarily for the benefit or convenience of the employer, and reasoned that they were not.

As the Court lucidly explained in <u>Alvarado</u>, getting to the place of employment indubitably benefits the employee, who receives pay for labor.[2] Even the Eleventh Circuit recognized that was true since it noted that U.S. workers are not entitled to such transportation costs. The Court held, "When a grower seeks employees and hires from its locale, transportation).costs that go beyond basic commuting are not necessarily going to arise from the employment relationship." <u>Arriaga</u>, 305 F.3d at 1242. Thus, the reason given for finding that the transportation to the first day of work for foreign workers is different for workers related to the Court's misunderstanding of the term "incident of and

---

[2]   In <u>Arriaga</u> the Court did not consider the benefits to the guest workers of seasonal employment in the U.S., many of which were identified by the <u>Alvarado</u> Court. Nonimmigrant guest workers earn far higher wages than are available in their home country, where many are unemployed or grossly underemployed. Like many U.S. workers, these guest workers are willing to travel substantial distances to obtain employment that pays more than they can earn locally. Some also find work for other U.S. employers after the end of their contracts; while such employment may not always be strictly legal, it is often lucrative and does not subject them to criminal penalties. The inbound transportation thus provides them access to jobs which pay far more money than they could possibly earn at home. At the very least, one cannot honestly say that the work arrangement only benefits the employer.

necessary to the employment:"  "Employers resort to the H-2A program because they are unable to employ local workers who would not require such transportation costs; transportation will be needed, and not of the daily commuting type, whenever employing H-2A workers."  *Id.*  The <u>Arriaga</u> Court erred in concluding that recruiting workers outside the local area converts their travel to the first day of work from something that  primarily benefits the employee to something that primarily benefits the employer.  The ultimate benefit to the employer is simply having a warm body present to do the work, whether that body belongs to a foreign guest worker or a U.S. worker makes no practical difference from the employer's perspective.  The false "conversion" decreed by the <u>Arriaga</u> Court thus is not only inconsistent with the regulations' prohibition of preferential treatment for foreigners, but also inconsistent with the rest of FLSA law that never treats travel to the first day of work as a benefit to the employer.

The Eleventh Circuit also mistakenly equated the transportation required to get to the first day of work with items such as uniforms, safety caps, explosives, etc.  <u>Arriaga</u>, 305 F.3d at 1243.  This a false comparison.  Uniforms, tools, and equipment are used by  employees while performing their employer's work, and for that reason have been held primarily to benefit the employer.  In contrast, the employer receives no benefit from the initial transportation.  The correct analogy would be to transportation that is incidental to the employer's work, such as traveling along the railroad right-of-way to perform maintenance given as an example in the regulations, or from field to field during the work day.  The cost of transportation that gets you to the first day of work is like the ordinary street clothes referenced in the <u>Arriaga</u> opinion, *see id.*, which no employer is expected to provide.  This view is supported by 29 C.F.R. §531.32 (infra).

D.      *Arriaga* Is Not Binding In The Fifth Circuit

Arriaga was decided by the Eleventh Circuit Court of Appeals, and therefore is not binding precedent in this action.  Cases from outside the Fifth Circuit are not binding on district courts, such as this one, sitting within the Fifth Circuit.  United States v. Dawson, 576 F.2d 656, 659 (5th Cir.1978).  No other Circuit Court has adopted or followed the Eleventh Circuit's holding in Arriaga.

While the decision of a sister Circuit can be persuasive, where, as here, the decision is based on dubious reasoning and assumptions, a Court not obligated to follow that precedent should reach its own conclusions.  "Although we do not take lightly disagreement with the views of our sister circuits, we are not constrained to follow them if, in our opinion, they are based upon an incomplete or incorrect analysis." Nixon v. Kent County, 76 F.3d 1381, 1388 (6th Cir. 1996), *citing* Atchison, Topeka & Santa Fe Ry. v. Pena, 44 F.3d 437, 443 (7th Cir.1994)("while we carefully consider the opinions of our sister circuits, we certainly do not defer to them . . . [o]ur duty is to independently decide our own cases, which sometimes results in disagreements with decisions of the other circuits")(internal citation omitted), affirmed,516 U.S. 152, 116 S. Ct. 595 (1996). Thus, this District Court, which sits in the Fifth Circuit, certainly is not bound to follow Arriaga.

## CONCLUSION

For the foregoing reasons, Amicus Curiae respectfully urge this Court to reject Plaintiffs' Arriaga claims.

Respectfully submitted,

<table>
<tr><td></td><td> /s/ J. Larry Stine     </td></tr>
<tr><td>Wimberly, Lawson, Steckel,</td><td>J. Larry Stine</td></tr>
<tr><td>Weathersby & Schneider, P.C.</td><td>Ga. Bar No. 682555</td></tr>
<tr><td>3400 Peachtree Rd. NE Ste. 400</td><td>Elizabeth K. Dorminey</td></tr>
<tr><td>Atlanta, Ga.  30326</td><td>Ga. Bar No. 225935</td></tr>
<tr><td>jls@wimlaw.com</td><td>*Attorneys for Movants*</td></tr>
<tr><td>bdorminy@bellsouth.net</td><td></td></tr>
</table>

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION**

| | |
|---|---|
| **CASTELLANO-CONTRERAS, et al.,** ) | |
| **on behalf of themselves and all others** ) | |
| **similarly situated,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **CASE NO. 2:06-CV-04340-EEF-SS.** |
| ) | |
| **DECATUR HOTELS, LLC., et al.,** ) | |
| ) | |
| **Defendants.** ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that I have this date filed a copy of the foregoing *Motion for Leave to File Brief of Amicus Curiae*, *memorandum in Support,* and *Amicus Brief* with the Court's CM/ECF system, which will serve a copy electronically on the following:

> Andrew Turner
> Kristi Graunke
> Mary C. Bauer
> Jennifer J. Rosenbaum
> Immigrant Justice Project
> Southern Poverty Law Center
> 400 Washington Avenue
> Montgomery, AL 35104
>
> Marni Willenson
> Willenson Law Group, LLC
> 4064 N. Lincoln Ave.
> Chicago, Illinois 60618
>
> Joshua Karsh
> Hughes Socol Piers Resnick & Dym, Ltd.
> 70 West Madison Suite 4000
> Chicago, Illinois 60602-4692

James M. Knoepp
Virginia Justice Center For
 Farm and Immigrant Workers
6066 Leesburg Pike, Suite 520
Falls Church, Virginia 22041

Tim A. Freilich
Legal Aid Justice Center
1000 Preston Avenue, Suite A
Charlottesville, Virginia 22903

C. David Briley
511 Union Street, Suite 1610
Nashville, Tennessee 37219-1733

This 12th day of December, 2006.


                                        s/J. Larry Stine
Wimberly, Lawson, Steckel,              J. Larry Stine
 Weathersby & Schneider, P.C.           Georgia Bar No. 682555
3400 Peachtree Rd. NE Ste. 400          *Attorneys for Movants*
Atlanta, Georgia 30326
(404) 365-0900
jls@wimlaw.com
bdorminy@bellsouth.net
F:\Data\Client\Decatur Hotels Amicus\amicus brief bkd jls rev 3.wpd